IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD A. ARNOLD, | : | CIVIL ACTION NO. **4:CV-13-1605** |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | (Magistrate Judge Blewitt) |
| CONSTRUCTION SPECIALTIES, INC., | : | |
| Defendant | : | |

## **REPORT AND RECOMMENDATION**

**I.       Background.**

On May 3, 2013, Plaintiff Todd A. Arnold, a resident of Lycoming County, Pennsylvania, filed through counsel the instant Complaint. (Doc. 1-2). Plaintiff initially filed his Complaint in the Court of Common Pleas for Lycoming County. On June 14, 2013, the Defendant, Construction Specialties, Inc., a New Jersey corporation, filed a Notice of Removal, removing the case to the U.S. District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1332, §1441 and §1446(d). (Doc. 1). Defendant stated that this federal Court has diversity jurisdiction over this action. Subsequently, on June 20, 2013, Defendant filed a Motion to Dismiss for Failure to State a Claim **(Doc. 2)**, pursuant to Fed.R.Civ.P. 12(b)(6), along with a Brief in Support and an attached Exhibit.[1]     (Docs. 3 & 3-1). On July 3, 2013, Plaintiff filed a Brief in Opposition to Defendant's Motion. (Doc. 4). On July 17, 2013, Defendant filed a Reply Brief with unpublished opinions attached. (Doc. 5). As such, Defendant's Motion to Dismiss  is now ripe for review.[2]

---

1.    Defendant states that Exhibit A to its Brief is a copy the Complaint Plaintiff filed in this case. However, Exhibit A attached to Defendant's Brief is a copy of Complaint in Trent v. Test America, Inc., filed in the U.S. district Court for the Eastern District of PA. (Doc. 3-1). Regardless, the correct Complaint which our Plaintiff filed was attached to Defendant's Notice of Removal. (Doc. 1-2).

2.    The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

## II. Allegations of Complaint.

In his Complaint, Plaintiff raises two claims, Count I, Contract and Count II, Public Policy, based on the time he was employed by Defendant corporation from August 20, 2007, until November 9, 2012, at Defendant's manufacturing plant located in Muncy, Lycoming County, PA. (Doc. 1-2, p. 5). Plaintiff states that on October 29, 2012, he was operating a forklift for Defendant when it struck an electrical box that was obscured from his vision, resulting in less than five hundred dollars ($500.00) damage to Defendant's property. (Id. at p. 6).

Based on that incident, as provided by Defendant's Substance Abuse Policy ("SAP"), which states that an employee must submit to a drug test if a work accident results in property damage in excess of $500.00, Defendant's Human Resource ("HR") Manager required Plaintiff to submit to a drug test. Plaintiff avers that Defendant's HR Manager made him submit to a drug test even though the $500.00 requirement of the SAP was not met regarding his forklift accident. Plaintiff admits that he was provided with a copy of Defendant's Employee Handbook which contained the SAP when he was hired and in January 2011, when it was revised. Plaintiff attached Defendant's SAP to his Complaint as Exhibit A. (Id. at p. 6).

Plaintiff states that he taken to Muncy Valley Hospital by an employee of Defendant in charge of safety following the forklift incident, where he provided a urine sample in a single specimen bottle. (Id. at p. 7). Plaintiff's sample was sent to a laboratory in New York City, New York. (Id.). On October 31, 2012, the lab reported that Plaintiff's sample tested positive for marijuana. Plaintiff contends, however, that at no time while he was employed by Defendant did he smoke, ingest, or otherwise use marijuana. (Id.).

Plaintiff avers that, as a result of Hurricane Sandy, which struck New York City on October 29, 2012, the City was without electricity during the entire time when his urine sample was in the possession of the laboratory utilized by Defendant. Thus, Plaintiff infers that his test

results were erroneous. (Id.). Further, Plaintiff asserts that the SAP provides that Defendant would follow federal procedures for employee drug/alcohol testing, 49 C.F.R. Part 40, which provide, *inter alia*, that each urine sample be split into two specimen samples at the time of collection, prior to testing. (Id. at pp. 7-8). Plaintiff goes on to essentially challenge Defendant's compliance with these federal regulations regarding his urine sample despite the SAP's provision that it would adhere to these regulations.

Plaintiff states that Defendant's SAP mandates that any positive result be subjected to a second confirmatory test. Therefore, on November 2, 2012, Plaintiff provided a second urine sample, which was split into two specimen bottles, as per the federal regulations. (Id., p. 9). Plaintiff states that his second urine test was sent to a different laboratory than his first test. Ultimately, Plaintiff states that his second sample tested negative for marijuana and any other drugs. (Id.). On November 9, 2012, as a result of the negative test, Plaintiff avers that Defendant's HR Manager asked Plaintiff if he wanted the initial New York laboratory to re-test his original urine sample. (Id.). Plaintiff, believing that sample to be erroneously collected and analyzed, declined the offer. (Id.).

Plaintiff alleges that on November 9, 2012, he was terminated from his employment with Defendant corporation for violating Defendant's SAP. (Id. at p. 6). Plaintiff filed his instant Complaint basically alleging that he was improperly terminated by Defendant.

As Count I of his Complaint, Plaintiff asserts a claim for breach of contract. He alleges that the Employee Handbook ("the Handbook"), which contains the SAP, "creates an express and implied contract between the Employee and the Employer with regard to the manner in which drug testing is conducted." (Id., p. 10). Plaintiff avers that Defendant owed him a duty "to comply with the provisions of the SAP regarding drug testing and breached that duty by termination [him] on November 9, 2012." Thus, Plaintiff contends that Defendant failed to comply with the proper drug testing procedures as specified in its own SAP, and thus

3

breached the Employee Handbook. Plaintiff also avers that he requested reinstatement of his job but Defendant's HR Manager refused to do so. (Id.).

As Count II of his Complaint, Plaintiff raises a claim for breach of public policy. (Id., pp. 10-11). Plaintiff states that Defendant violated public policy by improperly ignoring the federal drug testing regulations, which it agreed to be bound by in its SAP, and by terminating him based on "a drug test that he did not in fact fail." (Id.). As such, Plaintiff alleges that the actions by Defendant constitute a breach of public policy.

As relief, Plaintiff requests back pay for his loss of earnings and benefits, as well as front pay for the loss of his potential future earnings and benefits. (Id. at p. 12).

### III. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to

4

infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

Also, the *Reisinger* Court stated:

> Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir. 1999). **Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."** ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

*Id.*(emphasis added).

As such, we will consider Exhibit A attached to Plaintiff's Complaint, namely, Defendant's SAP. *See Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d at 1196.

5

**IV.     Discussion.**

As an initial matter, we note that because this is a case based upon diversity jurisdiction of this Court, 28 U.S.C. § 1332, we apply Pennsylvania law.  *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003).

### 1.     Breach of Contract Claim, Count I

We will begin by addressing the Plaintiff's claim for breach of contract.  Plaintiff basically avers that Defendant's Employee Handbook, containing the SAP, constitutes a contract.  As such, Plaintiff alleges that his termination by Defendant, which was in violation Defendant's SAP, amounts to a breach of that contract.  Defendant, however, argues that the Employee Handbook does not constitute a contract, and as such, Plaintiff's breach of contract claim fails as a matter of law.

The disputed section of Defendant's Handbook reads as   follows:

> The Company's drug and alcohol testing procedures comply with applicable laws.  Where there is no law or where such law does not provide specific procedures for drug or alcohol testing, the Company will use the Federal Rules for Transportation Workplace Drug and Alcohol Testing Programs, 49 CFR Part 40, as a guide.  These procedures ensure the integrity, confidentiality and reliability of the testing processes, safeguard the validity of the test results and ensure that these results are attributed to the correct employee.  Further, these procedures minimize the impact upon the privacy and dignity of persons undergoing such tests to every extent feasible.  Employees will receive a copy of the summary of the drug and alcohol testing procedures.  (Doc. 1-2, Ex. A).

Plaintiff argues that one of the regulations in Part 40 of the federal regulations, namely 49 C.F.R. 40.71, provides that all urine specimens must be split into two specimen samples for testing, and because Defendant did not follow that regulation in its initial test, it breached the contract created by the Employee Handbook.

Defendant disputes Plaintiff's assertion, however, on the grounds that the Handbook does not constitute a valid contact. In support of its contention, Defendant (Doc. 3, pp. 6-7) cites to Plaintiff's Exhibit A, the portion of the Handbook which contains a disclaimer providing as follows:

6

> **This Handbook is not a contract, express or implied, guaranteeing employment for any specific duration**. Although we hope that your employment relationship with us will be long term, either you or the company may terminate this relationship at any time, for any reason, with or without cause.

(Emphasis added).

The SAP provision contained in Defendant's Handbook also stated that "[t]his policy is not a contract of employment. Noncompliance with this policy will result in disciplinary action including immediate termination." (Doc. 1-2, p. 14). Further, the Prohibited Conduct Section of Defendant's SAP clearly stated that "Employees are prohibited from testing positive for drugs or alcohol." (Id., p. 14).

Plaintiff attempts to overcome the above specific and unambiguous disclaimer in Defendant's Handbook by arguing that "an employee handbook is contractually enforceable if a reasonable person in the employee's position would interpret a particular provision as evidence of the employer's intent to honor the promise made therein." (Doc. 4, p. 9). *See Bauer v. Pottsville Area Emergency Medical Service, Inc.,* 2000 Pa. Super. 252 (2000).

Initially, we agree with Defendants (Doc. 3, p. 11) that "Pennsylvania adheres to the employment at-will presumption, which holds that absent a contract to the contrary, an employee may be discharged for any or no reason." *Ruzicki v. Catholic Cemeteries, Inc.*, 610 A.2d 495, 497 (Pa. Super. 1992); *see Scott v. Extracorporeal, Inc.*, 376 Pa. Super. 90, 94 (1988). In *Scott*, the Pennsylvania Superior Court held that an employee handbook must "contain a clear indication that the employer intended to overcome the at-will presumption," in order to be considered a contract. *Id.* at 97. Further, in *Ruzicki*, the plaintiff attempted to argue that an employee handbook constituted a contract overriding his at-will employee status, despite the fact the handbook had a clear and contrary disclaimer. *Ruzicki*, 610 A.2d at 498. The *Ruzicki* Court held that because the handbook had a clear disclaimer, it could not constitute a contract, such that the at-will presumption was overcome. *Id.*

7

In the instant case, we are faced with a near identical factual background as the *Ruzicki* case. As stated, both Defendant's Employee Handbook and the SAP contain clear provisions that they are not employment contracts. Our Plaintiff is attempting to argue that Defendant's Employee Handbook should be considered a contract to overcome the at-will presumption, despite an explicit contrary disclaimer contained therein. Plaintiff cites to the *Bauer* case, which provides, in part, that an employee handbook may be contractually enforceable where a reasonable person in the employee's position would interpret or rely on a provision of that handbook as evidence of the employer's intent to honor a promise made therein. *Bauer, supra*. Plaintiff argues that Defendant "intended to extend to its production factory workers the protections provided by the law to drivers of motor carriers, for their safety and protection." (Doc. 4, p. 10). Accordingly, Plaintiff contends that a reasonable person would rely on the promises made in the SAP, and therefore, under *Bauer*, Defendant's Handbook should be considered a contract.

We concur with Defendant, however, that Plaintiff's reliance on *Bauer* is misplaced. (Doc. 5, p. 6). In *Bauer*, the court did not find that the handbook constituted a contract, which changed the employee's at-will status. Instead, it merely enforced a provision of the handbook, which expressly stated "any employee scheduled for at least 36 hours per week for a period of 90 consecutive days ***will*** be treated as a full time employee." (emphasis added) *Bauer*, 758 A.2d at 1296-1297. The *Bauer* Court enforced that provision because the handbook made a clear promise, and therefore concluded that it was reasonable for an employee to rely upon that promise. These are not the facts of our case.

Our Plaintiff contends that Defendant's Handbook indicates that Defendant will use split specimen drug testing and that Defendant failed to do so in his case. However, in the instant case, we find that the contents of the Defendant's Employee Handbook regarding split specimen drug testing are much less clear cut. As Defendant points out (Doc. 5, p. 7), the SAP states that where there is no other applicable law, "the [Defendant] will use the Federal

**8**

Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 49 CFR Part 40, *as a guide*." (Doc. 1-2, Ex. A)(emphasis added). Furthermore, as discussed above, the SAP states "employees are prohibited from testing positive for drugs ... [n]oncompliance with [the] policy will result in disciplinary action including ***immediate termination***." (emphasis added) (Id.). The SAP makes no direct reference to the regulation in 49 CFR Part 40 that requires two separate specimen samples, nor does it make an explicit promise that those regulations would govern all substance testing procedures, as the handbook in *Bauer* did.

      For these reasons, we agree with Defendant and find that Defendant's Employee Handbook does not constitute an enforceable contract, as no employee could reasonably rely on the language therein to constitute a contract obligation on the part of Defendant to precisely follow 49 CFR Part 40 procedures and utilize split specimen drug testing. Nothing in the language of the Defendant's Employee Handbook indicates that it intended to overcome the at-will presumption. We will quote the Pennsylvania Superior Court in finding that "we believe that the disclaimer indicates [the employer] does not [intend to overcome the at-will presumption], and we refuse to let the appellant [the employee] have his cake and eat it too by relying on one section of the handbook to establish his claim while ignoring another section which calls his claim severely into question [*i.e.,* the disclaimer]." *Ruzicki*, 416 Pa. Super at 43.

      As such, we will recommend Defendant's Motion to Dismiss be granted with regard to Plaintiff's breach of contract claim, Count I of his Complaint, and that this claim be dismissed with prejudice. Based on our foregoing discussion, we agree with Defendant and find futility in allowing Plaintiff to amend his Count I, breach of contract claim against Defendant. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)(Complaints should not be dismissed without leave to amend unless "amendment would be inequitable or futile").

### 2. **Breach of Public Policy**, **Count II**

As Count II of his Complaint, Plaintiff alleges despite the disclaimer in Defendant 's Employee Handbook that the Handbook is not a contact, "the discharge of the Employee [Plaintiff] by the Employer [Defendant] violates public policy because the Employer [Defendant] agreed to be bound by the Regulations of the federal Department of Transportation [*i.e.,* split specimen analysis] regarding employee drug testing." (Doc. 1-2, p. 10). Plaintiff also alleges that despite the disclaimer, "the discharge of the Employee by the Employer violates public policy because the inference, properly drawn from his involuntary termination, *i.e.* that he engaged in illegal use of marijuana, is incorrect and defamatory," and, "the Employer violates public policy because [Plaintiff's] discharge was predicated on his failing a drug test that he did not in fact fail." (Id. at p. 11).

Essentially, Plaintiff is contending that in terminating his employment, Defendant not only breached a contract, but also violated several unnamed public policies. We recognize that Pennsylvania state courts have typically found that an at-will employee has a valid cause of action, *i.e.,* an exception to the at-will presumption, where his termination violates a "clear mandate of public policy." *Weaver v. Harpster*, 601 Pa. 488, 502 (2009) ("An employee may bring a cause of action for a termination of [the at-will employment] relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy.").

The Third Circuit has recognized, however, that "although the perimeters of the narrow public policy exception have not been precisely defined, there appear to be 'three limited circumstances in which public policy will trump employment at-will.'" *Spyridakis v. Riesling Group. Inc*, 398 Fed. Appx. 793, 799 (3d Cir. 2010); *see also Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 111 (3d Cir. 2003). Those three circumstances are: (1) an employer cannot require an employee to commit a crime; (2) an employer cannot prevent an employee

from complying with a statutorily imposed duty; and (3) an employer cannot discharge an employee when specifically prohibited from doing so by statute.  *Fraser*, 352 F.3d at 111.

We find that Plaintiff does not allege any of the three traditional public policy exceptions to his at-will employment status with Defendant.  In fact, Plaintiff fails to identify any specific public policy violated by Defendant.  Further, we note that the Supreme Court of Pennsylvania has held, "where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer ... ."  *Geary v. United States Steel Corp.*, 319 A.2d 174, 180 (Pa. 1974).  We find that our Plaintiff's Complaint has disclosed a plausible reason for his own termination, the fact that he failed a drug test after his forklift accident.  Courts have previously found that "the policy alleged by plaintiff fails to 'strike at the heart of a citizen's rights,' especially in light of fact that plaintiff was terminated for testing positive for illegal drugs, a violation of [Employer's] polices."  *Ruby v. Federal Exp.*, 1992 WL 229877 *3 (E.D. Pa. 1992).

In response to Defendant's Motion to Dismiss his claim in Count II, we agree with Defendant (Doc. 5, pp. 3-4)  that Plaintiff mistakenly relies on the case of *Oliveri v. U.S. Food Service*,  2011 WL 521126 *4 (M.D. Pa. 2010).[3]  In *Oliveri*, the plaintiff alleged that he was terminated for raising concerns about certain commercial drivers avoiding the necessary drug tests.  The Court in *Oliveri* ultimately concluded that "to terminate [Plaintiff's] employment for making complaints regarding safety of the drivers/trucks, would be a violation of Pennsylvania's public policy."  *Id*.  To the extent our Plaintiff is claiming he was fired for raising concerns about Defendant's  compliance with federal drug testing regulations, we are unpersuaded by such an analogy.  In *Oliveri*, the Court sided with the plaintiff because it recognized the serious public policy concerns underlying the safety of drivers and the roads.  In the instant case, however,

---

3.     Defendant attached the *Oliveri* decision as Exhibit A to its Reply Brief, Doc. 5.

**11**

such public policy concerns do not buttress Plaintiff's claim contained in Count II of his Complaint. In fact, as Defendant correctly points out in its Reply Brief, it was out of respect for such concerns for driver safety that Defendant initially administered the drug test to Plaintiff after his forklift accident. (Doc. 5, p. 4). Thus, we agree with Defendant that it "is respecting the safety concern articulated in *Oliveri* by ensuring that employees operating vehicles are drug tested when appropriate and acting based on the results of the drug test." (Id.). As such, we do not find that our Plaintiff's termination by Defendant violates any clear mandate of public policy. Contrarily, we find that Plaintiff has failed to allege any policy at all that has been violated by Defendant.

Additionally, as discussed above and as Defendant points out (Doc. 5, p. 4), Plaintiff is not correct that Defendant implied in the SAP of its Handbook that it would comply with the drug testing procedures contained in 49 CFR Part 40 to utilize split specimen drug testing. Rather, as mentioned, Defendants' SAP clearly stated that it would look to 49 CFR Part 40 procedures only as a "guide."

Moreover, in regard to Plaintiff's argument that his termination violates public policy against defamation, we are similarly unpersuaded. Plaintiff states in his Opposition Brief, Doc. 4, that "the Commonwealth has a clear public policy against the publication of defamatory statements, and this requires employers to exercise care with respect to the truth or falsity of drug test results." To that end, however, Plaintiff does not cite to any case, statute, or policy whatsoever, nor does he fit his claim contained in Count II of his Complaint into one of the three public policy categories enunciated in *Spyridakis*. We agree with Defendant that "[d]ischarging an employee in a manner that results in defamation is not a clearly recognized public policy." (Doc. 5, p. 5). Defamation is a free-standing claim, which sounds in tort law, and does not necessarily implicate a breach of public policy. Plaintiff has simply failed to establish, therefore, that defamation is grounds for a breach of public policy claim in Pennsylvania.

**12**

Accordingly, we will recommend that Plaintiff's breach of public policy claim contained in Count II of his Complaint be dismissed with prejudice. We concur with Defendant that "Plaintiff cannot establish a clear mandate of public policy that was violated by Defendant when it terminated his employment upon receipt of a positive drug test result." (Doc. 5, p. 6). Thus, we find futility in granting Plaintiff leave to amend his Complaint as to Count II. *See Grayson, supra*.

**V.        Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Dismiss **(Doc. 2)** be **GRANTED**, and that Plaintiff's claim for breach of contract (Count I) and claim of breach of public policy (Cont II) be dismissed with prejudice.  It is also recommend that the Court close this case.

    s/ Thomas M. Blewitt

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 24, 2013**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD A. ARNOLD, | : | CIVIL ACTION NO. **4:CV-13-1605** |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CONSTRUCTION SPECIALITIES, INC., | : | |
| Defendant | : | |

# **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **September 24 , 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

                                                   s/ Thomas M. Blewitt
                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated: September 24, 2013**